**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

In re:                                          *

**CHRISTOPHER JOHN CAHILL**          *          **Case No. 22-16740 MCR**
                                                           **(Chapter 7)**

     **Debtor.**                              *

---

**APPLICATION FOR COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES OF OFFIT KURMAN, P.A. AS**
**SPECIAL COUNSEL TO LAURA J. MARGULIES, CHAPTER 7 TRUSTEE**

This Application of Offit Kurman, P.A. (the "Applicant") is for Compensation and Reimbursement of Expenses as Special Counsel to Laura J. Margulies, the Chapter 7 Trustee (the "Application") for the period of January 17, 2023, through the date of filing this Application ("Fee Period"). In support of the Application, the Applicant states as follows:

**Background**

1.      On December 2, 2022, the Debtor filed a Petition under Chapter 7 of the Bankruptcy Code in Case No. 22-16740 MCR ("Bankruptcy Estate" or "Bankruptcy Case" or "Bankruptcy Schedules"). Laura J. Margulies was the duly appointed Chapter 7 Trustee and continues to serve as the Chapter 7 Trustee of the Debtor (the "Trustee").

2.      On January 11, 2023, the Trustee filed an Application to Employ Applicant as Special Counsel to the Trustee to assist in recovering assets of the Debtor for the benefit of creditors of the Bankruptcy Estate. [DE 26].

3.      On February 7, 2023, the Court entered an Order appointing Applicant as Special Counsel to the Trustee. [DE 44].

1

## Application

4.      Applicant submits this Application for its efforts in representing the Trustee.

5.      The services for which compensation is sought and the expenses for which reimbursement is sought herein have not been the subject of a prior fee application.   All professional services for which allowance of compensation is requested were performed by Applicant for and on behalf of the Trustee and the Debtor's Estate and not on behalf of any other person or entity.

6.      Attached hereto as Exhibit A is a detailed breakdown of services rendered to the Estate during the Fee Period that reflect time charges at the hourly rate of the respective attorneys and professional staff of Applicant (collectively the "Statement" or the "Fee Period").   The Statement reflects the date, the description of services on behalf of the Estate and the identity of the professional staff member performing such services.   The rates charged by the Applicant are the rates customarily charged on routine, non-complicated matters, without considering the size of the case and the degree of responsibility, difficulty, complexity and results achieved.

7.      The Bankruptcy Estate received gross receipts totaling Eighty-Three Thousand 00/100 Dollars ($83,000.00) as a result of the Trustee's and Applicant's efforts.   The Statement reflects total time charges of Thirty-Seven Thousand Eight Hundred Ninety-Five and 50/100 Dollars ($37,895.50) representing 86.80 hours of time expended and out-of-pocket expenses necessarily incurred in the amount of Two Hundred Thirty and 81/100 Dollars ($230.81) for a total sum of Thirty-Eight Thousand One Hundred Twenty-Six and 31/100 Dollars ($38,126.31) by the Applicant in Exhibit A for the Fee Period. The Applicant made a discretionary adjustment of $735 for preparing for, and attending, the first meeting of creditors on January 11, 2023, but not charging time and also for a discretionary adjustment of $140 on February 25, 2025.

8.     Pursuant to Local Bankruptcy Rule 2016-1, Applicant has prepared this Application in accordance with the Compensation Guidelines for professionals in the United States Bankruptcy Court for the District of Maryland (the "Compensation Guidelines").

### Compensation Guidelines Analysis

9.     With respect to the Compensation Guidelines, Applicant submits the following standards have been complied with, or are being complied with, in this Application.

a)     The Statement attached hereto represents a detailed itemization of the services rendered, time expended, and expenses incurred in the course of providing professional services to the Trustee.  The Statement reflects total time charges for the Fee Period of Thirty-Seven Thousand Eight Hundred Ninety-Five and 50/100 Dollars ($37,895.50) representing 86.80 hours of time expended and out-of-pocket expenses necessarily incurred in the amount of Two Hundred Thirty and 81/100 Dollars ($230.81) for a total sum of Thirty-Eight Thousand One Hundred Twenty-Six and 31/100 Dollars ($38,126.31), which includes a discretionary adjustment of $875.00, by the Applicant in Exhibit A for the Fee Period. Applicant believes that the services rendered were necessary and beneficial to the estate.

b)     Applicant hereby confirms it has reviewed the time and expenses for which compensation is sought in this Application and believes such compensation to be reasonable.

10.     The Compensation Guidelines require categorizing the major tasks performed in the course of representing the Trustee.  The following is a detailed summary description of services rendered, organized by task, and the summary of the time expended for each timekeeper working on such task.  The attached Statement contains a listing of daily time entries that have been edited to reflect the corresponding task numbers provided below.

**Task 001**
**General Administration and Fact Investigation**

11.     Prior to the filing of this case, the Debtor owned and operated Botanical Decorators, Inc. ("Botanical") and CJ Cahill Design Build, Inc. ("Design Build").

12.     Both Botanical and Design Build were corporations organized by the Debtor and licensed to do business in the State of Maryland, the District of Columbia and the Commonwealth of Virginia.

13.     Both Botanical and Design Build were in the home remodeling and landscape design business.

14.     The Debtor exercised control over Botanical and Design Build such that some of their obligations and employees were commingled.

15.     On November 7, 2022, Botanical filed a Petition under Chapter 7 of the Bankruptcy Code in Case No. 22-16223 MCR. Laura J. Margulies is the duly appointed Chapter 7 Trustee of Botanical.

16.     Also on November 7, 2022, Design Build filed a Petition under Chapter 7 of the Bankruptcy Code in Case No. 22-16226 MCR. Laura J. Margulies is the duly appointed Chapter 7 Trustee of Design Build.

17.     Botanical and Design Build are hereinafter collectively referred to as the "Debtor Entities."

18.     Richard Cahill ("Richard") is the spouse of the Debtor.

19.     Applicant performed initial research including reviewing the Debtor's Schedules, Statement of Financial Affairs and the Schedules and Statement of Financial Affairs of the Debtor Entities, which showed various transactions including the sale of assets belonging to the Debtor

and Debtor Entities to employees and subcontractors, loans to the Debtor Entities and various other questionable financial transactions.

20.    The Trustee did not receive all the required documents from the Debtor prior to the § 341 Meeting pursuant to 11 U.S.C. § 521, including the Debtor's bank statements.

21.    On January 11, 2023, Applicant attended the nearly one-hour long 341 Meeting of Creditors. However, Applicant notes that it did not charge the Estate for its time in preparing for and attending this § 341 Meeting, a savings to the Estate of $735.

22.    On March 15, 2023, Applicant attended the nearly two (2) hour long 341 Meeting of Creditors.

23.    During these two (2) § 341 Meetings, in which the Trustee, Applicant, the U.S. Trustee's Office and other creditors questioned the Debtor, the Debtor gave conflicting answers to many questions, failed to provide clear and concise answers, and claimed he failed to recall important facts and information even though the events in question occurred just prior to the filing of the cases.

24.    Due to the length of the two (2) 341 Meetings, the volume of information and facts discussed, the number of assets and financial transactions involved which were all intertwined with the Debtor and the Debtor Entities, as well as the Debtor's confusing and conflicting testimony, Applicant needed to order and review the transcripts from the 341 Meetings. The transcripts aided Applicant in its review of the Debtor's testimony, and ability to cross-reference the Debtor's testimony with the actual facts from the bank records, tax returns and other documentation which evidenced numerous preference payments, fraudulent pre and post-petition transfers and an intent to hinder and delay the proper administration of the Estates.

25.     In order to complete its due diligence and proper investigation into the Debtor's business and personal financial affairs, Applicant drafted and served a Subpoena to Sandy Spring Bank for complete bank records for the period of December 1, 2020 through and including December 31, 2022, merely to acquire the records of the Debtor.   The Debtor at times could not produce complete records and the Trustee had concerns whether the Debtor would produce complete and accurate records.

26.     Upon receiving and reviewing the requested documents from the Debtor and Sandy Spring Bank, which were voluminous, Applicant learned that the Debtor created complex and confusing business operations whereby funds from customers of the Debtor Entities, as well as payments to the vendors, subcontractors and employees of Debtor Entities were at times commingled amongst the bank accounts for each Debtor entity, as well as the Debtor's personal bank accounts.

27.     The Debtor also commingled some assets of the Debtor Entities as well as his personal assets.

28.     Applicant also learned that the books and records for the Debtor Entities were poorly maintained.

29.     During the course of the investigation of the Debtor's personal and business affairs, Applicant learned that the Debtor loaned a significant amount of money to the Debtor Entities prior to the filing of these bankruptcy cases.

30.     Applicant communicated extensively with the Trustee regarding the release of the Debtor's bank records, the US Trustee's office regarding the documentation produced and other issues, and with Debtor's counsel.

31.     Creditors Scott and Shannon Forchheimer ("Forchheimer") communicated with Applicant regarding their intent to file a Motion for Relief from Stay with respect to their rights to recover from the Guaranty Fund maintained by the State of Maryland's Home Improvement Commission, and to obtain the Trustee's consent to the relief from stay.

32.     Applicant communicated with Counsel for Forchheimer and the Trustee regarding the Trustee's consent to the relief from stay, which was ultimately filed on July 31, 2023.

33.     The lack of cooperation by the Debtor, his failure to turn over complete and accurate records, as well as his conflicting and false testimony at both 341 Meetings caused an unnecessary increase in fees and a significant delay in the administration of the Estate, at the expense of his creditors.

34.     The time spent by Applicant performing this task is summarized as follows:

| Timekeeper | Rate | Hours | Amount Billed |
|---|---|---|---|
| James M. Hoffman – Attorney | $535.00 | 9.70 | $5,189.50 |
| James M. Hoffman – Attorney | $590.00 | 0.30 | $ 177.00 |
| Miriam Margulies – Paralegal | $125.00 | 0.20 | $ 25.00 |
| Miriam Margulies – Paralegal | $200.00 | 3.20 | $ 640.00 |
| **Total Task 001** | | **13.40** | **$6,031.50** |

**Task 002**
**General Correspondence with Trustee**

35.     Applicant communicated with the Trustee regarding the status of various progressions throughout the case.

36.     The time spent by Applicant performing this task is minimal and summarized as follows:

| Timekeeper | Rate | Hours | Amount Billed |
|---|---|---|---|
| James M. Hoffman – Attorney | $535.00 | 0.90 | $481.50 |
| **Total Task 002** | | **0.90** | **$481.50** |

7

**Task 003**
**Adversary Proceeding by Creditors**

37.     Robert LaBelle and Michelle LaBelle (the "LaBelles"), creditors and former clients of the Debtor Entities, filed a Complaint Objecting to the Granting of a Discharge of the Debtor in Adv. Proc Case No. 23-00098.

38.     Prior to the filing of this case and the bankruptcy cases of the Debtor Entities, the LaBelles met with the Debtor to discuss large-scale home and landscape renovations at their residence.

39.     From May 2021 to December 2021, the Debtor provided the LaBelles with occasional estimates for the renovation project before settling on an agreement estimate of $1.3 million separated into three (3) agreements, an agreement for the interior of the home; an agreement for the backyard and pool; and an agreement for a tea house.

40.     Between early January of 2022 and March 31, 2022, the LaBelle's paid the Debtor and Debtor Entities a total of $367,371 as part of deposits toward the interior, backyard and tea house projects as well as what the Debtor told the LaBelles was for the purchase of windows, materials and acquiring permits.

41.     However, the LaBelles alleged that the Debtor did not purchase or order any of the materials, nor did he acquire any of the necessary permits.

42.     After paying the Debtor and his Debtor Entities over $360,000 between January and March 2022, work did not begin until May of 2022.

43.     In total, the LaBelles paid the Debtor and his Debtor Entities $508,971, despite the fact that not all the appliances, cabinetry, windows, proper materials and other items were purchased as the Debtor had informed the LaBelles.

44.     On September 21, 2022, workers ceased showing up at the LaBelle's residence.

45.     Shortly thereafter, the Debtor Entities and the Debtor filed for bankruptcy.

46.     As alleged in a separate suit for fraud filed in the United States District Court for the Eastern District of Virginia on October 25, 2022, Civil Action No. 1:22-cv-1212 (the "EDVA Complaint"), the LaBelles alleged that the Debtor systematically and fraudulently while falsely advising with the LaBelles within the year prior to filing, transferred or otherwise liquidated assets of Botanical and Design Build, while advising the LaBelles that materials and products had been ordered, permits had been pulled and deposits had been made, and their renovation project was on schedule, with the intent to hinder, delay or defraud the LaBelles.

47.     Applicant and Counsel for the LaBelles shared related documentation and conducted correspondence regarding the LaBelles claims against the Debtor and Debtor Entities, and issues and facts related to the Debtor and Debtor Entities' preference payments, avoidance actions and the Debtor's dischargeability issues.

48.     Applicant facilitated a settlement agreement between the LaBelles and the Debtor and on July 26, 2023, the LaBelles filed a Consent Motion to Approve Compromise.

49.     On August 22, 2023, another creditor and former client of the Debtor, Patrick McCusker ("McCusker"), filed an Objection to the Motion to Approve Compromise.

50.     On September 14, 2023, the Court entered a Consent Order Granting Motion for Approval of Compromise between the LaBelles and the Debtor.

51.     As part of said Consent Order, the Debtor has agreed to pay to the LaBelles a total sum of $60,000. The Debtor will also paid McCusker a total sum of $15,000, and the LaBelles agreed to pay McCusker $3,000 from their settlement proceeds.

52.     The time spent by Applicant performing this task is summarized as follows:

| Timekeeper | Rate | Hours | Amount Billed |
|---|---|---|---|
| James M. Hoffman – Attorney | $535.00 | 6.80 | $3,638.00 |
| **Total Task 003** | | **6.80** | **$3,638.00** |

### Task 004
### Objection to Exemptions

53.     In coordination with the Trustee, Applicant prepared and filed multiple Objections to the Debtor's Claim of Exemptions and Amended Claim of Exemptions ("Exemption Objections") relating to a $44,000 tax refund as well as additional personal property that the Trustee claimed exceeded the applicable exemptions and/or was not subject to an exemption as tenancy by the entireties due to the Debtor Entities' and the Debtor's individual case's joint claims against the Debtor and Richard.

54.     On November 22, 2023, the Trustee filed a Complaint in Adversary Proceeding Case Number 23-00287 against the Debtor and Richard alleging various causes of action ("Complaint").

55.     The Trustee alleged that the Debtor Entities were entitled to avoid transfers ("Transfers") made to or for the benefit of the Debtor and Richard during the three (3) year period prior to the Petition Date including, without limitation, preferential transfers and those Transfers set forth on Exhibits A, B and C attached to the Complaint.

56.     The Complaint alleged that, at the time of the Transfers, the Debtor Entities made payments on antecedent debts to the Debtor and/or Richard during the applicable preference period on account of credit and/or loans provided by the Debtor and/or Richard.

57.     The Complaint alleged that the Debtor, as an officer of the Debtor Entities, commingled the assets and obligations of the Debtor Entities.

58.     The Complaint alleged that the Debtor distributed assets of both Debtor Entities to former employees, vendors, subcontractors, and to the Debtor and Richard without reasonably

10

equivalent value or to hinder, delay or defraud other creditors, including customers, from receiving a distribution in bankruptcy.

59.    The Complaint alleged that the Debtor and Richard received avoidable Transfers from the Debtor Entities that were deposited into accounts owned as tenancy by the entirety.

60.    The Complaint alleges that many Transfers were not accurately disclosed in the Debtor's Schedules and Cahill SOFA nor were they accurately disclosed in the Debtor's testimony at meetings of creditors in his individual case or the cases of the Debtor Entities.

61.    Applicant attended several status hearings regarding the Trustee's Objection to Exemptions as well as other claims against the Debtor.

62.    The parties agreed to engage the services of a third-party mediator. After extensive negotiations lasting months between the parties, and to avoid the significant costs of further investigation into the facts in this case, the costs of litigation and the risk of loss, the Parties agreed to a settlement agreement (the "Settlement Agreement") to settle the claims regarding the Transfers between the Debtor Entities, on the one hand, and the Debtor and Richard, on the other hand.

63.    Under the Settlement Agreement, the Debtor and Richard agreed to pay to the Estate the total sum of $75,500.00 ("Settlement Amount"). Additional terms in which the Debtor and Richard agreed to pay the Settlement Amount are summarized below:

    A.    Within 5 business days of the date of the Settlement Agreement, the Debtor was to file a proposed Consent Order wherein the Exemptions Objection is resolved by (i) all assets of the Debtor being deemed fully exempt, except (ii) a portion of the Debtor's 401(k) retirement account, as scheduled at line 21 of Schedule A/B at docket entry 65 in his individual case, equal to Seventy Five Thousand Five Hundred Dollars and No Cents ($75,500.00), shall be deemed non-exempt (the "Non-Exempt 401(k) Portion"); and

    B.    At such a time as the Trustee deemed proper, but in no event more than six (6) months after entry of an order resolving the Exemptions Objection, the Trustee was to file a motion with this Court seeking turnover of the Non-Exempt 401(k) Portion from the custodian of the Debtor's retirement account (the

11

"Turnover Motion"). The Debtor was to execute a consent order acknowledging his acquiescence to – and support of – the Turnover Motion (the "Turnover Consent Order").

64.     On April 4, 2024, Applicant drafted and filed the Motion to Approve Compromise, which was filed in the Adv. Proc. 23-00287, as well as the Debtor's individual case and the bankruptcy cases of the Debtor Entities. DE 131.

65.     On May 10, 2024, the Court entered an Order Granting Motion by Chapter 7 Trustee for Approval of Compromise of Claims against the Debtor and Richard ("Order Approving Compromise").

66.     During the pendency of this task, Applicant communicated extensively with Counsel for the Debtor and Counsel for Richard in attempt to negotiate a resolution of the Trustee's claims against the Debtor.

67.     Applicant also performed legal research in connection with the objection to claim of exemptions.

68.     Applicant drafted several Objections to Debtor's Claim of Exemptions, due to the Debtor's amendments of the exemptions and attended several status hearings thereon.

69.     The time spent by Applicant performing this task is summarized as follows:

| Timekeeper | Rate | Hours | Amount Billed |
|---|---|---|---|
| James M. Hoffman – Attorney | $485.00 | 3.10 | $ 1,503.50 |
| James M. Hoffman – Attorney | $535.00 | 23.00 | $12,305.00 |
| James M. Hoffman – Attorney | $590.00 | 1.70 | $ 1,003.00 |
| Miriam Margulies - Paralegal | $200.00 | 6.20 | $ 1,240.00 |
| **Total Task 004** | | **34.00** | **$16,051.50** |

## Task 005
## 3401 Lowell St., NW, Washington, DC 20016

70.     Among the assets of the Estate was real property owned by the Debtor and Richard located at 3401 Lowell St., NW, Washington, DC 20016 ("DC Property").

71.     The Debtor listed on his Amended Schedule A, the DC Property as having a value of $1,700,000.

72.     Upon the request of the Trustee, Applicant research the liens on the DC Property as well as performed title research in an attempt to negotiate a potential sale of the DC Property.

73.     On September 13, 2023, Pentagon Federal Credit Union ("Pentagon FCU") filed a Motion for Relief from Stay ("Lift Stay Motion"). DE 86.

74.     According to the Lift Stay Motion filed by Pentagon FCU, the balance owed to Pentagon FCU was $1,309,217.50.

75.     The Trustee's proposed real estate agent viewed the DC Property and believed that the value of the DC Property may exceed the Scheduled value. As such the Trustee desired to market and sell the DC Property for the benefit of the Debtor's unsecured creditors.

76.     On September 19, 2023, Applicant prepared and filed an Opposition to said Motion for Relief from Stay. DE 90.

77.     On September 27, 2023, the Debtor also filed an Opposition to the Motion for Relief from Stay. DE 95.

78.     Applicant communicated with Pentagon FCU and Debtor's Counsel in an attempt to resolve the Lift Stay Motion and to negotiate a sale of the DC Property.

79.     On October 26, 2023, Applicant attended a status hearing in which the Court determined that the Trustee be given an opportunity to work with her broker to market and sell the DC Property.

80.     Applicant communicated with the Trustee's broker and potential purchaser of the DC Property.

81.     Shortly thereafter, the Trustee learned that the DC Property was blighted, had an

unusual taxation applied because of the blighted status and had far less value than represented and anticipated.

82.     The Property continued to accrue taxes on the basis that it was a vacant/blighted property. As of August 27, 2024, the accrued taxes were $457,693.65.

83.     After lengthy negotiations between Pentagon FCU and Counsel for Richard, and to avoid the significant costs of litigation, the risk of loss, and the costs of listing the Property, the Parties reached an agreement ("DC Property Settlement Agreement") to settle their claims regarding the Estate's interest in the equity of the DC Property.

84.     Under the DC Property Settlement Agreement, First Savings Mortgage Corporate, the holder of the Deed of Trust secured by the DC Property, agreed to pay the Estate the sum of $7,500 in consideration for the Trustee and Richard executing a Deed in Lieu of Foreclosure. Richard also waived his exemption in the DC Property and has executed a Deed in Lieu of Foreclosure Certificate so the Trustee, the Debtor and Richad Cahill will all transfer their interest in the Property to First Savings Mortgage to allow it to sell the DC Property.

85.     Applicant drafted a Waiver of Exemption to be signed by Richard.

86.     Applicant also drafted and filed the Motion to Approve Compromise.

87.     On February 13, 2025, the Court entered an Order Granting the Motion to Approve Compromise with First Savings Mortgage Corporation.

88.     The time spent by Applicant performing this task is summarized as follows:

| Timekeeper | Rate | Hours | Amount Billed |
|---|---|---|---|
| James M. Hoffman – Attorney | $535.00 | 5.40 | $2,675.00 |
| James M. Hoffman – Attorney | $590.00 | 2.40 | $1,416.00 |
| Miriam Margulies – Paralegal | $200.00 | 2.80 | $  560.00 |
| **Total Task 005** | | **10.20** | **$4,651.00** |

**Task 006**
**Collection and Enforcement of Settlement Agreement**

89.     Prior to the filing of this case, the Debtor owned real property located in the State of Delaware which was used as a beach house.

90.     The Debtor and his spouse sold the Delaware property prior to the filing of this case.

91.     Shortly before ethe Debtor filed Amended Schedules A/B and C identifying:

   a.   Refund for taxes withheld on sale of Delaware residence State $44,094.93

        Schedule C;

        Refund for taxes withheld on sale of $44,094.93 Delaware residence Line from Schedule A/B: 28.4 100% of fair market value, up to any applicable statutory limit 11 U.S.C. § 522(b)(3)(B)

92.     The Trustee requested documentation showing the amount of the Delaware capital gains refund ("DE Refund") and its disposition.

93.     The Debtor acknowledged that the DE Refund was more than $88,000 from the State of Delaware as a refund, presumably being double the $44,094.93 that the Debtor disclosed.

94.     The Trustee filed an objection to the claim of exemption of the DE Refund stating at one point:

        Tax refund From DE $44,094.93 0 §522(b)(3)(B) $44,094.93 Debtor received $88,200 refund. He allocates half to spouse, then claims rest as t/e. If half the funds belong to the Debtor and his spouse, as claimed, §522(b)(3)(B) does not apply since the funds are not owned jointly

95.     On November 7, 2023, the Trustee filed a Supplement to Objection to Debtor's Amended Claim of Exemptions. DE 114

15

96.     The Debtor failed to comply with the Order Approving Compromise and his obligations under the Settlement Agreement and the Bankruptcy Code adding to the expense of administration.

97.     Applicant prepared a Motion for Show Cause Order Why the Debtor Should Not Be Held in Contempt and Detained for Violation of a Court Order.

98.     Thereafter, Applicant engaged in correspondence and negotiations with Debtor's Counsel regarding the DE Refund. Pursuant to the Order Granting Motion to Approve Compromise with the Debtor, and the execution of the Settlement Agreement, the Debtor was to file Amended Schedules A/B and C to reduce the amount of his exempt retirement funds from a total of $75,500 and turnover said sum to the Trustee.

99.     Applicant communicated to Debtor's counsel numerous times requesting the Debtor's Schedules to be amended properly so that the Trustee may timely administer the case.

100.    After lengthy correspondence and significant communication delays from the Debtor and Debtor's Counsel, the Debtor failed to amend his schedules.

101.    Pursuant to the Settlement Agreement, Applicant drafted a Motion to Compel the Debtor to Turnover the Settlement Amount and provided a copy to Debtor's Counsel for his review and for the Debtor's Consent, which the Debtor was required to do pursuant to the terms of the Settlement Agreement.

102.    However, after further continued delays from the Debtor and his Counsel and the Debtor's refusal and failure to execute a Consent Order, on June 14, 2024, Applicant filed the Motion to Compel without the Debtor's consent. DE 143.

103.    On July 9, 2024, the Court entered an Order Granting Trustee's Motion to Compel Debtor to Turnover Property of the Estate ("Turnover Order"). DE 144.

104.    Applicant procured a certified copy of the Turnover Order from the Court and served John Hancock Financial ("John Hancock"), the holder of the Debtor's retirement funds, with a copy of the Certified Turnover Order.

105.    Applicant then engaged in lengthy discussions with John Hancock regarding their process to release and turnover the Settlement Amount.

106.    Representatives from John Hancock were not timely with their responses, they were not familiar with Court documents and were unable to comprehend how to properly comply with the Turnover Order and release the Settlement Amount to the Trustee. This caused another unreasonable delay.

107.    After several weeks of discussions, legal counsel for John Hancock informed Applicant that in order to release the Settlement Amount, they will need a Court Order specifically naming the full retirement plan name of Christopher John Cahill, as Plan Administrator of the CJC & Associates, Inc. T/A Botanical Decorators 401(k) Plan, Group Annuity Contract No. 25850.

108.    On August 2, 2024, Applicant prepared and filed a Motion to Revise Order Granting Trustee's Motion to Compel Turnover of Property of the Estate. DE 146.

109.    On August 21, 2024, the Court Entered the Revised Order Granting Trustee's Motion to Compel Turnover of Property of the Estate which ordered Christopher John Cahill, as Plan Administrator of the CJC & Associates, Inc. T/A Botanical Decorators 401(k) Plan, Group Annuity Contract No. 25850 to turnover the Settlement Amount to the Trustee within ten (10) days of the entry of said Order ("Revised Turnover Order"). DE 147.

110.    Applicant sent a copy of the Revised Turnover Order to John Hancock.

111.     It took John Hancock over two (2) months to comply with the Court's Revised Turnover Order and send the Settlement Amount to the Trustee as it waited for the Debtor to execute documents and the Debtor wanted to discuss the issues further. Then, John Hancock mistakenly initially sent only $75,000. Two weeks later, they subsequently sent the remaining $500.

112.     The time spent by Applicant performing this task is summarized as follows:

| Timekeeper | Rate | Hours | Amount Billed |
|---|---|---|---|
| James M. Hoffman – Attorney | $535.00 | 0.20 | $   107.00 |
| James M. Hoffman – Attorney | $590.00 | 4.50 | $2,655.00 |
| Miriam Margulies – Paralegal | $200.00 | 3.20 | $   640.00 |
| **Total Task 006** | | **7.90** | **$3,402.00** |

### Task 007
### Objection to Claims of the U.S. Department of Labor

113.     The Department of Labor ("DOL"), on behalf of CJC And Assoc., Inc. T/A Botanical 401(k) Plan ("401K Plan"), filed two late claims.

114.      The DOL filed a portion of the claims as a priority, but documentation did not support priority treatment.  The DOL provided such information in subsequent communications.

115.     A priority claim for a pension is based on the earnings within 180 days of the filing of the case.  $17,461 was identified as a priority claim and a $9,547 general unsecured claim in both cases.

116.      The Trustee subsequently learned that one of the claims related to claims against Design Build, but such claim was not filed and was added to claims in the Botanical and the Debtor's estates.

117.     On September 6, 2024, nearly one and a half years after the claims bar date expired, the DOL, on behalf of the 401K Plan, filed Claim No. 29 in this case for a total amount of

$26,881.28, $17,461.08 of which the DOL states the 401K Plan is entitled to a priority claim under 11 U.S.C. § 507(a)(5).

118.    On September 6, 2024, the DOL, on behalf of Claimant, filed a second, but general unsecured Claim No. 30, in the total amount of $11,041.44.

119.    The Trustee, Applicant and the DOL conducted correspondence about the claims of the 401K Plan so the Trustee and Applicant could better understand why there are claims even being filed against Botanical and the Debtor when the Debtor was managing the Plan in issue and took loans against the 401K Plan.

120.    The DOL was very cooperative and addressed many of the Trustee's concerns including providing documentation to support priority claims.

121.    The Trustee stated that the 401K Plan and DOL did not pursue the filing of the claims with the diligence required by the Bankruptcy Code and Rules and the claims should be treated as subordinated to timely filed claims under 11 U.S.C. §726(a)(3).

122.    Applicant attempted to avoid filing  an Objection to the Claims of the DOL by working with the DOL.

123.    After continued discussions and negotiations, the Trustee, Applicant and the DOL were able to resolve their disagreements and the DOL amended their claim in the Botanical proceeding, and the Trustee determined that it was not necessary to file the Objection to the late filed claims of the DOL in this proceeding.

124.    Because the above-referenced claims of the DOL also include the same claims filed in Botanical, Applicant charged its time in correspondence with the DOL to the Botanical proceeding so as not to duplicate time entries.

125.     The time spent by Applicant performing this task is summarized as follows:

| Timekeeper | Rate | Hours | Amount Billed |
|---|---|---|---|
| James M. Hoffman – Attorney | $535.00 | 0.20 | $ 107.00 |
| James M. Hoffman – Attorney | $590.00 | 4.50 | $2,655.00 |
| Miriam Margulies – Paralegal | $200.00 | 3.20 | $ 640.00 |
| **Total Task 006** | | **7.90** | **$3,402.00** |

## Task 008
## Application for Compensation

126.     This Application for Compensation has been prepared in accordance with the Compensation Guidelines for Professionals in the United States Bankruptcy Court for the District of Maryland.  The Application for Compensation sets forth a detailed statement of: (1) the services rendered, (2) the time expended, (3) the expenses incurred, (4) the amounts requested, (5) the rates charged for such services, (6) how the services rendered were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of the case, (7) information relevant to a determination that the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed, and (8) an affirmation that the compensation requested is reasonable based upon the customary compensation and reimbursement of expenses charged by the applicant and comparably skilled professionals in non-bankruptcy matters.  Additionally, in an effort to reduce costs to the Estate, Applicant utilized non-attorney staff, such as paralegals when applicable.

127.     The time spent by Applicant performing this task is summarized as follows:

| Timekeeper | Rate | Hours | Amount Billed |
|---|---|---|---|
| James M. Hoffman – Attorney | $650.00 | 1.20 | $ 780.00 |
| Miriam Margulies – Paralegal | $200.00 | 10.40 | $2,080.00 |
| **Total Task 007** | | **11.60** | **$2,860.00** |

| CUMULATIVE TIMEKEEPER HOURS AND AMOUNT BILLED | | |
|---|---|---|
| | **Hours** | **Amount Billed** |
| **Total Task 001** | **13.40** | **$ 6,031.50** |
| **Total Task 002** | **0.90** | **$ 481.50** |

| Total Task 003 | 6.80 | $ 3,638.00 |
|---|---|---|
| Total Task 004 | 34.00 | $16,051.50 |
| Total Task 005 | 10.20 | $ 4,651.00 |
| Total Task 006 | 7.90 | $ 3,402.00 |
| Total Task 007 | 2.00 | $ 580.00 |
| Total Task 007 | 11.60 | $ 3,060.00 |
| **TOTAL** | 86.80 | $37,895.50 |

## **Lodestar Analysis**

Under the lodestar analysis of twelve (12) factors enumerated in **Johnson v. Georgia Highway Express, Inc.**, 488 F.2d 714 (5th Cir. 1974) and adopted by the Fourth Circuit in **Barber v. Kimbrells, Inc.**, 577 F.2d 216 (4th Cir. 1978) and **Harman v. Levin**, 772 F.2d 1150 (4th Cir. 1985), Applicant submits the following analysis:

(a)  **Time and Labor Expended**.  Applicant's detailed Statement of services is attached as Exhibit "A."  Applicant has consciences reviewed the Statement for duplicative or unnecessary entries and has previously removed or adjusted any such entries.

(b)  **Skill Required to Properly Perform Legal Services Rendered**.  Because of the nature of the issues discussed above, in order to adequately represent the Trustee during the course of these proceedings, an expertise in the area of bankruptcy law, and federal litigation was required.  Applicant believes that the skill was required in order to properly perform the legal services required by the Trustee and that they possess such skills. James M. Hoffman, has practiced bankruptcy law and commercial litigation for more than thirty years (30) years, has been involved in numerous complex Chapter 11 cases, has served as general counsel to a Chapter 11 Trustee and special counsel to a Chapter 11 Trustee, and regularly serves as general counsel and/or special counsel to Chapter 7 Trustees in this and other jurisdictions.

(c)  **Counsel's Opportunity Costs in Presenting the Instant Litigation**. Applicant does not believe the opportunity costs in representing the Trustee was a factor in this

case, however, it was high risk due to the utter and complete lack of cooperation by the Debtor and significant communication delays. This hampered the Trustee's ability to timely administer the Estate, which unnecessarily increased fees and costs, at the expense of the Debtor's creditors.

(d)    **Customary Fees for Like Work**.    The customary fees charged in these matters are normally measured by the time expended and the results obtained.  In representing the Trustee, Applicant charged its usual and customary rate for all similar bankruptcy and non-bankruptcy cases.

(e)    **Applicant's Expectation at the Outset of Litigation**.  As in all litigation, there is no guarantee as to the outcome.

(f)    **Time Limitations**. The issues presented in this case did not impose significant time limitations upon Applicant.

(g)    **Amount in Controversy and Result Obtained**.  The Applicant was engaged as Special Counsel to the Trustee to investigate the Debtor's business operations, undisclosed assets, and fraudulent conveyances, preference payments including pre and post-petition payments and liquidation of the Estate's assets.  Applicant's efforts resulted in the Estate collecting gross receipts totaling Eighty-Three Thousand Five Hundred and 00/100 Dollars ($83,000.00) from the Settlement Agreement with the Debtor, and the Settlement Agreement with First Savings Mortgage Corporation.

(h)    **Experience, Reputation and Ability of Counsel**.  Applicant submits it is well respected among the bench and bar of this Court and the courts of neighboring jurisdictions. Applicant submits that as a result of its experience in bankruptcy matters, Applicant performed legal services required in representing the Trustee with a high degree of confidence and within an

economy of time as compared to the amount of time which would have been required by a lesser experienced Applicant.

(i)      **Undesirability of Case**.  Applicant believes that the representation herein was undesirable for a number of reasons set forth above as the Debtor engaged in profound dilatory tactics by removing assets of the Estate prior to and after the filing of this case and the bankruptcy cases of the Debtor Entities, failing to disclose to the Trustee and the Court about such removal of assets, failing to provide information and documentation about such assets, failing to provide the Trustee with the requested and required documentation prior to and after the 341 Meetings, failing to provide complete and accurate responses at each of his 341 Meetings, failing to amend his exemptions to reduce his retirement account value, failing to execute a Consent Order regarding the turnover of the Settlement Amount, and failing to timely provide responses to the Trustee and Applicant throughout the entire administration of the Estate, among other actions and omissions. This caused an unnecessary delay in the administration of the Estate at the expense of the Applicant and the other creditors of the Estate. These problems were balanced in part by working with the Chapter 7 Trustee who is knowledgeable, experienced and makes Applicant's representation more efficient through combining our efforts. Frequently, as in this case, it was initially not known whether there would be sufficient assets to pay the Applicant, which makes the case undesirable. This type of case is essentially a contingent fee case with no compensation associated with the high risk taken.

Furthermore, Applicant notates that attorney and paralegal staff engaged in a significant amount of work, not all of which was billed to the Estate, including extensive review of the lengthy transcripts of the Debtor's 341 Meetings, bank records, correspondence with Debtor's Counsel, John Hancock and other professionals and other legal work.

(j)   **Professional Relationship with Client**.   As stated in the Affidavit of Proposed Attorneys as part of its Retention Application, and as filed with the Court, Applicant has no relationship or connection with the Debtor, his creditors or any other parties in interest, or their respective attorneys in this bankruptcy proceeding or the Chapter 7 Trustee except as disclosed. The Applicant represented the Trustee in this case.

(k)   **Fee Awards in Similar Cases**.   Applicant believes that the compensation sought in this Application is reasonable and consistent with fees awarded in similar cases.

(l)   **Conformity with Compensation Guidelines:**   The undersigned hereby certifies that he is familiar with Local Rule 2016-1 and Appendix "D" thereto, the Compensation Guidelines for Professionals in the United States Bankruptcy Court for the District of Maryland (the "Compensation Guidelines"), and that to the best of his knowledge this Application for Allowance of Fees to Counsel for the Trustee, seeking fees, was submitted in conformity with the Local Rule and the Compensation Guidelines.

WHEREFORE, Applicant prays that it be awarded final compensation and costs as follows:

A.   That compensation be awarded to Offit Kurman, P.A. in the amount of Thirty-Seven Thousand Eight Hundred Ninety-Five and 50/100 Dollars ($37,895.50) and reimbursement of out-of-pocket expenses necessarily incurred in the amount of Two Hundred Thirty and 81/100 Dollars ($230.81), and the Applicant having made a discretionary adjustment of $875; and

B.   That this Court authorize the Trustee to immediately pay the sum of Thirty-Eight Thousand One Hundred Twenty-Six and 31/100 Dollars ($38,126.31); and

C.    And for such other and further relief as this Honorable Court may deem just and proper under the circumstances.

Date:  April 9, 2025                             Respectfully submitted,

                                                 */s/ James M. Hoffman*
                                                 James M. Hoffman, Esquire, Bar No. 04914
                                                 Offit Kurman, P.A.
                                                 7501 Wisconsin Avenue, Suite 1000W
                                                 Bethesda, Maryland 20814
                                                 O (240) 507-1700
                                                 F (240) 507-1735
                                                 jhoffman@offitkurman.com
                                                 *Counsel for Laura J. Margulies, Chapter 7 Trustee*

4897-8262-0448, v. 8